BAILES, Judge.
This is an appeal by the City of Port Allen, Louisiana, and its insurer, The Travelers Insurance Company, from the judgment of the trial court awarding plaintiffs, John Anderson and his wife, Mrs. Noemie L. Anderson, damages for physical injuries and medical expenses arising out of a fall sustained by plaintiff, Mrs. Anderson, on the sidewalk at 621 South Jefferson Street in the City of Port Allen, on August 21, 1965. While no written reasons for judgment are in the record, to sustain the judgment the trial court found the defendant City guilty of negligence in permitting the sidewalk on which plaintiff fell to remain in a state of disrepair and that the defendant had not sustained the burden of proving plaintiff was guilty of contributory negligence which was a proximate cause of the fall and the resulting injuries and damages. We find that the trial court committed reversible error in failing to find that Mrs. Anderson was guilty of negligence which was the proximate cause of the accident thus operating as a bar of any recovery by her and her husband.
Plaintiff Mrs. Anderson was recovering from certain operative procedures for the *132 fusion of a hip joint, and, as had been recommended by her physician, she, along with her husband, was taking an evening walk. A few minutes prior to her fall she and her husband had stopped to talk to a friend who lived across the street from 621 South Jefferson. Upon concluding this brief visit and as she stepped forward on the broken sidewalk she fell. Mrs. Anderson testified that she did not leave the sidewalk during the few minutes of the visit. Both parties put in evidence photographs of the broken sidewalk. It is obvious from the photographs that the sidewalk is broken and that the footing is uneven, however, there is no testimony that this area on the day of Mrs. Anderson’s fall was concealed from view or how much variation there was between the level of the broken area and that of the regular sidewalk. It is impossible for us to determine this from a viewing of the photographs.
Mrs. Anderson described the manner in which she fell as follows:
“By Mr. Cole:
sfc * * * * *
“Q. Now, I wonder if you would, Mrs. Anderson, in your own words, tell the Court how you happened to be traveling on this particular section of highway that day.
“A. I’ll do my best. Well, on — to start off with, we usually would go out for a walk in the afternoons, not every afternoon, but this had taken place since I’d had this surgery done, and I took these walks for exercise. Now, we didn’t always take the same route; sometimes we would go north on Jefferson, or we would go straight down Avenue E, just depending upon what the mood we’d be in when we’d start out for our walk. But this day we went south on Jefferson, and as we were walking along in front of this — on South Jefferson, Mr. Miller was driving off in his truck, and he stopped and we stopped and had a conversation, and when we finished talking we started to walk again, and that’s when I tripped on the sidewalk. I did not get off of the sidewalk, however, during the conversation.
* * * * * *
“Q. Can you tell the Court how you fell, exactly?
“A. Well, I tripped on this piece of sidewalk that was broken, and I fell on my left side, the side which I was operated on, unfortunately.
“Q. When you say you tripped, can you be any more specific?
“A. Stumbled. I—
“Q. Did you — for instance, do you feel that your heel caught, or what?
“A. Well, no, I — I think it must have been the front part of my shoe rather than the heel, and I had flats on that day, as I normally use when we go out walking like that.”
Mr. Anderson testified about the fall as follows:
“Q. Well, after you finished your conversation with Mr. Miller, what did you and Mrs. Anderson do next?
“A. We started to walk down the street again, and that’s when she — she caught her foot in that — that piece of concrete.
“Q. Well, did you actually see her catch her foot in the concrete ?
“A. No, I saw her start to lurch, I mean start to fall, and I — I was al *133 most close enough to grab her, and if I could have I could have saved her a lot of misery, but I was about a step away from her and I just couldn’t — couldn’t quite grab her.”
Appellants rely on the case of White v. City of Alexandria (1949) 216 La. 307, 43 So.2d 618, as authority for their contention that the City of Port Allen was guilty of no negligence that can legally be ascribed as the proximate cause of the plaintiff’s unfortunate fall.
In the White case, the Supreme Court, in 43 So.2d, page 620, stated:
“[1-3] From this jurisprudence there have evolved certain legal principles which are to be considered in determining the instant controversy. Thus, a municipality is not an insurer of the safety of pedestrians. It must keep the sidewalks reasonably safe, but the maintaining of them in perfect condition is not necessary. To render it liable in damages the defect complained of must be dangerous or calculated to cause injury. Defects in sidewalks that are not in the nature of traps, or from which danger cannot reasonably be anticipated, provide no actionable negligence. Such ways of passage are intended for public use, of course, and a pedestrian is entitled to assume that they are not dangerous. Further, he is not required to constantly observe the surface of the walk or to exercise the care that would be necessary in traversing a jungle. However, he cannot be completely oblivious of its condition; he must exercise ordinary care when using it, having in mind the well recognized fact that throughout every city of any size in this state there exist irregularities in the walkways brought about by natural causes such as rains, expansion, soil erosion and tree roots.
“[4] For determining what is a dangerous defect in a sidewalk (that which renders the municipality responsible in damages to a pedestrian injured as a consequence thereof) there is no fixed rule; the facts and surrounding circumstances of each particular case control. The test usually applied, however, reJ quires an answer to the question of whether or not the walk was maintained in a reasonable safe condition for persons exercising ordinary care and prudence.”
"" The above stated pronouncement of the law is controlling here. The irregularity and broken place in this sidewalk was clearly and plainly visible. Plaintiffs were walking in the daylight hour of six o’clock in the evening. The plaintiffs can give no reason for not having observed this irregularity in the walk. We must conclude that the sole and proximate cause of this accident was the inattention of Mrs. Anderson and her failure to observe what was clear and visible. We believe and so hold that had Mrs. Anderson exercised ordinary care she would have observed and avoided the uneven walk at her feet.
Plaintiffs argue that the case of Bustamente v. City of New Orleans (1965) La.App., 175 So.2d 404 is controlling and under the holding of the court they should be entitled to damages. In this cited case, the court found that plaintiff was aware of the generally poor condition of the brick sidewalk and that she was in fact walking with caution. It further found that notwithstanding her caution, plaintiff therein fell in a hole which had been concealed from her view by reason of an accumulation of mud, leaves and grass. Therein the court held that the hole, which was invisible, constituted a trap or was in the nature of a trap which could not have been reasonably anticipated by a pedestrian.
For these reasons, the judgment appealed from is reversed and there is now judgment herein in favor of the defendants and against the plaintiffs rejecting their demands at their cost.
Reversed and rendered.