448 So.2d 1002 (1984)
NIKKO GOLD COAST CRUISES, et al., Petitioners,
v.
Karl GULLIFORD, et al., Respondents.
No. 63045.
Supreme Court of Florida.
April 5, 1984.
*1003 Steven Kronenberg of Adams, Kelley & Kronenberg, Miami, for petitioners.
Peter S. Schwedock of Pelzner, Schwedock, Finkelstein & Klausner, Miami, for respondents.
ADKINS, Justice.
We have before us for discretionary review Gulliford v. Nikko Gold Coast Cruises, 423 So.2d 588 (Fla. 1st DCA 1982), which is in direct conflict with United States Fidelity and Guaranty Co. v. Rowe, 126 So.2d 737 (Fla. 1961). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const.
Karl Gulliford worked as a tour bus dispatcher for Nikko Gold Coast Cruises, a Miami Beach tour company. In that position he dispatched tour buses, answered the phone, did repair work on tour boats, handled problems with tour bus drivers, and assisted customers in making reservations. In addition to Gulliford's other routine duties, each day he would empty the cash drawers used by the employer's tour ticket sellers, lock the money in his car, and take the money home for the evening. If Gulliford ever used his car at night he would always lock the cash in a safe place in his home. The next morning he would take the cash back to work so that the ticket sellers would have a ready supply of money on hand to make change for customers. The ticket sellers were unable to open for business until the money was brought in. Gulliford stated that he viewed this task as part of his job and considered himself to be the guardian of the money.
The cash from the drawers regularly consisted of approximately $500. Because of the amount of money involved, Marvin Wildman, a former owner of Nikko Gold Coast Cruises, stated that he did not consider it safe to leave it at the ticket office overnight. Hence, Wildman initiated the practice of having Gulliford take the money home each night. Wildman paid him $100 per month as a car allowance primarily for the purpose of using his personal car to assist tour bus drivers if a bus broke down. Wildman also stated that the car allowance included payment for the cost of taking the cash home at night and bringing it back in the morning.
Approximately two weeks before Gulliford's accident, Wildman sold his business to Jerry Faber. The new owner told Gulliford that until informed otherwise, his job would remain exactly the same. On the morning of the accident Gulliford followed his normal route to work. He never reached his destination because, en route to his employer's office, he was involved in an automobile accident.
Gulliford filed a claim for workers' compensation which was controverted by his new employer, Jerry Faber. Faber argued by affidavit that the only reason Gulliford was driving at the time of the accident was to get to work, and that his injury did not *1004 arise out of and in the course of his employment. The deputy commissioner agreed and dismissed the claim. The First District Court of Appeal reversed and remanded for consideration of Gulliford's benefits.
The petitioners assert that this case is governed by this Court's decision in Rowe. We disagree. In Rowe, the claimant was a teacher in a nursery school. One of her duties was to act in a supervisory capacity during the absence of the regular supervisor and to collect nursery fees. She had been instructed not to leave money at the school overnight. The claimant left work on a Friday with $30 in fees. The following Monday while returning to work, also carrying the $30, she was struck by an automobile and injured. We held that she was not entitled to relief under workers' compensation and we reaffirmed that there must be some causal connection between the injury sustained and the employment of the applicant. See Glasser v. Youth Shop, 54 So.2d 686 (Fla. 1951). We stated:
If there can be recovery under the facts in this case, then there could be recovery in the case of any employee who carried about with him "any of the paraphernalia" of his employment, and who sustained an injury while absent for any reason from his work.
Rowe, 126 So.2d at 738.
The facts of Rowe do not indicate that there was any understanding between the employer and the claimant as to whether the fees should be taken home, or taken to a bank, or taken to any other safe place. There is likewise no indication that she was required to bring the fees back the next working day or that the return of the fees was necessary, or even helpful, to the functioning of the nursery school. As far as we know, the claimant could have left the fees at home that Monday and it would have had the same incidental effect on the operation of the nursery school as if she had forgotten her keys or any other paraphernalia of her employment. See Everett Ford Co. v. Laney, 189 So.2d 877 (Fla. 1966). In addition, the claimant was not paid any additional salary for transporting the fees either in the form of overtime or as transportation reimbursement.
The instant case however, differs significantly from Rowe. Gulliford had been taking the cash home every day for several years. There was a complete understanding between himself and his employer as to the essential nature of his task. He was paid $100 a month for automobile expenses which compensated him for this task as well as others. It was absolutely necessary that the cash be returned to the business each morning in order for the ticket sellers to be able to open their windows. The record establishes that, in fact, another employee had to be sent to the accident site to get the cash on the day of the accident because the business could not begin operation without it. Even if Gulliford had not intended to come to work for the day, he would have still had to make the same trip in order to return the operational cash to the business or, make arrangements for someone else to do so.
We hold, as did the district court below, that our decision in Cook v. Highway Casualty Co., 82 So.2d 679 (Fla. 1955), controls the instant case. In that case we stated:
We are persuaded that the decisions of those courts which do not require the [Industrial Relations Commission] to weigh the business and personal motives and determine which is the dominant or compelling cause of the trip, are more consistent with the remedial purposes of our workmen's compensation act than is the more stringent rule of Marks' Dependents v. Gray, [167 N.E. 181 (N.Y. 1929)], and we agree with the Mississippi court that "`no nice inquiry' will be made to determine the relative importance" of a concurrent business and personal motive. Brookhaven Steam Laundry v. Watts, [59 So.2d 294 (Miss. 1952)]. So long as the business purpose is "at least a concurrent cause of the trip", Barragar v. Industrial Commission, [238 N.W. 368 (Wis. 1931)], the employer may *1005 be held liable for workmen's compensation.
Id. at 682. In Marks' Dependents, Judge Cardozo formulated a rule to be applied to an employee who is injured on a trip that serves both a business and personal purpose. He stated:
We do not say that service to the employer must be the sole cause of the journey, but at least it must be a concurrent cause. To establish liability, the inference must be permissible that the trip would have been made though the private errand had been canceled.
Marks' Dependents, 167 N.E. at 183. We find that under the instant facts the inference would be permissible that the trip would have been made even if Gulliford had not intended to go to work that day. Therefore, even under the more strict rule of Marks', which we rejected in Cook, liability has been established.
Since our decision in Cook, we have continued to hold that it is not necessary that the dominant purpose of a trip be business. All that need be determined is that an injury occurred as the result of a trip, a concurrent cause of which was a business purpose. See, e.g., Krause v. West Lumber Co., 227 So.2d 486 (Fla. 1969); Levine v. Builders Aluminum Stone Co., 186 So.2d 26 (Fla. 1966). We hold that in the instant case Gulliford's task of bringing the cash to work for the ticket sellers' use was a sufficient concurring cause of his trip to invoke liability as a work related injury.
We therefore approve the decision of the district court.
It is so ordered.
BOYD, OVERTON, EHRLICH and SHAW, JJ., concur.
ALDERMAN, C.J., dissents with an opinion.
McDONALD, J., dissents.
ALDERMAN, Chief Justice, dissenting.
I dissent and would deny review of the decision of the First District. Although, in the opening paragraph, the majority states that the present decision conflicts with United States Fidelity and Guaranty Co. v. Rowe, 126 So.2d 737 (Fla. 1961), it later correctly explains in some detail that Rowe differs significantly from the present case. There being no express and direct conflict, the petition for review should be denied.