562 So.2d 892 (1990)
LOUISIANA STATE BAR ASSOCIATION
v.
Morris Randal FISH.
No. 88-B-0942.
Supreme Court of Louisiana.
June 4, 1990.
Dissenting Opinion August 1, 1990.
*893 Thomas O. Collins, Executive Counsel, G. Fred Ours, Asst. Counsel, New Orleans, for plaintiff-applicant, LSBA.
George W. Healy, III, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, for defendant-respondent Morris Randal Fish.

DISCIPLINARY PROCEEDING
SHORTESS, Justice Pro Tem.
The Louisiana State Bar Association has instituted this disciplinary proceeding against Morris Randal Fish. Notice, involving one specification of misconduct, was sent by registered mail and received by him on March 1, 1988.
The Committee on Professional Responsibility (Committee) held a formal investigative hearing on March 14 and 15, 1988. Fish failed to appear and was not represented by counsel. The Committee, by a unanimous vote, found that Fish had violated the laws of this state relating to the professional conduct of lawyers and to the practice of law of sufficient gravity as to evidence a lack of moral fitness for the practice of law.
On April 19, 1988, the Committee filed a Petition For Disciplinary Action and the next day an order was signed by this court requiring Fish to answer the petition within fifteen days of service. The matter was forwarded to the Sheriff of Travis County, Texas, the county of Fish's last known address. The Sheriff, however, was unable to serve him. The Committee filed a Motion to Appoint A Curator Ad Hoc, and George W. Healy, III, was appointed by this court to represent Fish. Healy filed an answer on November 7, 1988. Hani E. Dehan was later appointed Commissioner and after an extension of time on the Commissioner's motion, a hearing was held on March 10, 1989. Fish appeared and was represented by Mr. Healy. On January 8, 1989, the Commissioner filed his findings with this court and recommended that a public reprimand issue; that Fish be ordered to refund $2,500.00 in unearned legal fees to Mr. Charles Bayne within ninety days of the recommendation becoming final; that proof of such payment be furnished *894 to the Committee; and that upon failing to furnish proof of payment, Fish be suspended from the practice of law until payment is made in full. The Committee concurred with the Commissioner's recommendation of discipline. The matter was set for oral argument before this court on the Committee's motion; however, Fish did not respond, nor did he except to the Commissioner's findings.
The Bar Association has the burden of establishing by clear and convincing evidence that Fish was guilty of the alleged specification of misconduct. Louisiana State Bar Association v. Dowd, 445 So.2d 723 (La.1984). The misconduct alleged is as follows:
That in your capacity as Attorney at Law, you were retained to represent the interest of one Mr. Charles Bayne in a matter involving a criminal case. That you were paid a fee in advance in the amount of $5,000.00. That you did fail, neglect, or refuse to provide meaningful services for your client. That you did in fact not complete the representation in the criminal case and have failed, neglected, and refused to account to your client for the $5,000.00 fee paid in advance and have failed, neglected, or refused to refund to your client the unearned portion of the fee paid in advance. All of the above in violation of Rules 1.15, 1.16(d), and 8.4(c) of the Rules of Professional Conduct of the Louisiana State Bar Association.[1]
*895 The evidence taken at the hearings established that Charles Bayne went to Fish and sought legal representation in a criminal matter, as he had been charged with forcible rape. A retainer fee of $5,000.00 was set on August 20, 1986. The retainer was paid in installments, with the final and full payment made on January 8, 1987. Fish did not place the retainer in a trust fund, and none of it was ever refunded to Bayne. Fish made one courtroom appearance, conducted pre-trial discovery, and had laboratory tests done on Bayne's behalf.
In the latter part of 1986, Fish experienced various personal problems which resulted in a precipitous loss of weight, marital problems, and a deteriorating financial position due to a decline in his legal practice. He decided to leave the practice of law and in February 1987 moved to Texas. Before leaving, Fish made arrangements with S. Patrick Phillips to handle some of his files, including Bayne's. Fish testified that he instructed Bayne to contact Phillips. Bayne denies receiving such instructions.
On or about February 10, 1987, Bayne went to court for a hearing, and when Fish failed to appear, Bayne went to his office only to discover that he had moved to Texas and transferred Bayne's file to Phillips. Bayne then visited Phillips. Phillips testified that when he examined the file, he found it to be extensive and fairly complete. He further stated that Fish had reached an agreement with the District Attorney which would permit Bayne to plead guilty to a reduced charge of second degree battery. Phillips also told Bayne that if he did not accept the plea and the matter proceeded to trial on the charge of forcible rape, an additional fee would be charged. Bayne informed Phillips that he did not want his services and would find other counsel.
Bayne then contacted Susan Scott, an attorney who had rented office space with Fish. Scott volunteered to represent Bayne, pro bono, as a favor to Fish. She was joined by Ronald Interbitzin, an established criminal attorney. The record indicates that Scott and Interbitzin diligently performed services for Bayne which culminated in a plea bargain on July 27, 1987. No fees were paid by Bayne to either of them. The plea agreement was similar to the one Fish had arranged earlier.
Whether a fee paid in advance of services is classified as belonging to the client or to the attorney depends on the purpose of the payment. A retainer which secures general availability to the client and which is not related to the fee for a particular representation belongs to the attorney and need not be placed in a trust account. On the other hand, an advanced fee for particular services not yet performed constitutes funds of the client which should be placed in a trust account and not withdrawn or withheld without the consent of the client. Lawyers' Manual on Professional Conduct § 45:101 (1984); Louisiana State Bar Association v. Williams, 512 So.2d 404 (La.1987). When the Bar Association proves that the attorney failed to deposit his client's funds in an identifiable bank account, the burden is on the attorney to show there was no conversion to his own use. Louisiana State Bar Association v. Krasnoff, 448 So.2d 1002 (La. 1986); Louisiana State Bar Association v. Williams, supra; Louisiana State Bar v. Alker, 530 So.2d 1138 (La.1988).
*896 The fees in this case were for legal services not yet provided and should have been placed in a trust account. Fish admitted that he had converted these funds to his own use. This was a violation of Rule 1.15 of the Rules of Professional Conduct.
The next issue is whether Fish, after terminating his representation, took steps to the extent reasonably practicable to protect Bayne's interests, such as giving reasonable notice of termination, allowing time for employment of other counsel, surrendering papers and property, and refunding any advance payment of unearned fees, in compliance with Rule 1.16(d) of the Rules of Professional Conduct.
The evidence established that Bayne did not have notice of termination nor time to employ other counsel. He appeared in court on a forcible rape charge and assumed that Fish would be there to represent him. Bayne's testimony also indicates that he did not know that Fish had terminated his legal services. It is unlikely that Bayne would have gone to court unrepresented on such a serious charge had he been informed and been given reasonable notice to obtain new counsel. Fish did not protect his client's interests, as required by Rule 1.16(d).
Further, according to his own testimony, Fish made no attempt to document or account for the work done, nor did he refund any unearned portion of the fee. Fish did provide substantial services to Bayne, as his file contained witness statements, police reports, lab reports, research, and notes on the case. Fish also negotiated a favorable plea bargain that was similar to the plea that Bayne ultimately accepted. The fact remains, however, that Bayne had to seek additional counsel after Fish left the state. It was Scott and Interbitzin who completed the legal work in this case. They completed the file, prepared for trial, and negotiated the final plea bargain accepted by Bayne.
The purpose of lawyer disciplinary proceedings is not primarily to punish the lawyer but rather to maintain appropriate standards of professional conduct to safeguard the public, to preserve the integrity of the legal profession, and to deter other lawyers from engaging in violations of the Rules of Professional Conduct. The discipline to be imposed will depend upon the seriousness of the offense involved and the facts and circumstances of each case. The court will take into account both aggravating and mitigating circumstances. Louisiana State Bar Association v. Starr, 515 So.2d 776 (La.1987); Louisiana State Bar Association v. Hickman, 471 So.2d 696 (La.1985); Louisiana State Bar Association v. Whittington, 459 So.2d 520 (La. 1984).
An official public reprimand is the appropriate disciplinary action for Fish's misconduct in this matter. Since substantial additional legal services were necessary to complete this case, the Commissioner's and Committee's recommendations that half of the $5,000.00 fee paid be returned to Bayne is reasonable.[2]

DECREE
For the reasons assigned, it is ordered, adjudged and decreed that Morris Randal Fish is hereby publicly reprimanded for his conduct in this matter. Fish is further ordered to return $2500.00 in fees to Charles Bayne within 90 days from the date this judgment becomes final and to provide proof of payment to the Committee. Should Fish fail to furnish proof of payment to the Committee within that time, he shall be suspended from the practice of law until such payment is made. Fish is to bear all costs of this proceeding.
LEMMON, J., concurs and assigns reasons.
DENNIS, J., dissents with reasons.
LEMMON, Justice, concurring.
Respondent's misconduct appears to warrant a harsher penalty than a public reprimand.[1] *897 Nevertheless, the handling of advanced fees for particular services remains an unsettled question at this time.[2] Moreover, respondent performed substantial investigative and research services and negotiated the same plea bargain which was ultimately reached by new counsel at no expense to the client, who ultimately suffered no detriment from being foresaken by respondent. I therefore concur in the penalty imposed.

DISCIPLINARY PROCEEDING
DENNIS, J., dissenting.
I respectfully dissent. The majority inconsistently implies that the respondent wrongfully dealt with his client's money but that he nevertheless earned the entire fee. If Fish did earn the fee, he should have been merely publicly reprimanded. LSBA v. Starr, 515 So.2d 776 (La.1987). To make Fish pay money he did not owe is in reality a fine or penalty not authorized by disciplinary sanction principles. However, if Fish did not earn the entire $5,000 fee but converted the money to his own use, the discipline imposed is too lenient as a suspension would be more appropriate. The majority's failure to resolve the inconsistency creates injustice in this case and capriciousness in our precedents.
NOTES
[1] "Rule 1.15. Safekeeping property

(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in a bank or similar institution in the state where the lawyer's office is situated, or elsewhere with the consent of the client or third person. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.
(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.
(c) When in the course of representation a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests. If a dispute arises concerning their respective interests, the portion in dispute shall be kept separate by the lawyer until the dispute is resolved."
. . . .
"Rule 1.16 Declining or terminating representation
(a) Except as stated in Paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if:
(1) The representation will result in violation of the rules of professional conduct or other law;
(2) The lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client; or
(3) The lawyer is discharged.
(b) Except as stated in Paragraph (c), a lawyer may withdraw from representing a client if withdrawal can be accomplished without material adverse effect on the interests of the client, or if:
(1) The client persists in a course of action involving the lawyer's services that the lawyer reasonably believes is criminal or fraudulent;
(2) The client has used the lawyer's services to perpetrate a crime or fraud;
(3) A client insists upon pursuing an objective that the lawyer considers repugnant or imprudent;
(4) The client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled;
(5) The representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client; or
(6) Other good cause for withdrawal exists.
(c) When ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation.
(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law."
. . . .
"Rule 8.4 Misconduct
It is professional misconduct for a lawyer to:
(a) Violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
(b) Commit a criminal act especially one that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
(c) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
(d) Engage in conduct that is prejudicial to the administration of justice;
(e) State or imply an ability to influence improperly a judge, judicial officer, governmental agency or official;
(f) Knowingly assist a judge or judicial officer in conduct that is a violation of applicable Rules of Judicial Conduct or other law; or
(g) Except upon the expressed assertion of a constitutional privilege, to fail to cooperate with the Committee on Professional Responsibility in its investigation of alleged misconduct.
(h) Present, participate in presenting, or threaten to present criminal charges solely to obtain an advantage in a civil matter."
[2] It is clear that Bayne received legal services well over $5,000.00 in value. It is also apparent that had Bayne accepted the original plea agreement negotiated by Fish, he would not have required additional counsel. These facts are irrelevant, however, since it was Bayne's right to refuse that plea agreement and, having refused, Fish was still bound to provide legal representation.
[1] Respondent failed to deposit the client's funds in a trust account, used the funds for personal expenses without any accounting or refund of unearned fees, failed to communicate the plea bargain, failed to appear for his client's criminal trial, and failed to communicate his intention to terminate the employment.
[2] See Louisiana State Bar Association v. Tucker, 560 So.2d 435 (La.1989). This court has appointed a committee to study amendment of the Rules of Professional Conduct regarding advanced fees for particular services.